WEAVER, J.
The general rule of respondeat superior is that an employer is not liable for the torts of its employees who act outside the scope of their employment.[1] This case raises the question whether this Court has adopted an exception to the respondeat superior rule of employer nonliability found in 1 Restatement Agency, 2d, § 219(2) (d). Under this exception, an employer would be liable for the torts of an employee acting outside the scope of his or her employment when the employee is “aided in accomplishing” the tort “by *218 the existence of the agency relation.”[2] We hold that this Court has not previously adopted this exception, and we decline to adopt it.
We affirm in part the decision of the Court of Appeals, but for different reasons, reverse in part, and remand to the trial court for entry of a judgment of dismissal with prejudice.
FACTS
We adopt the facts as related by the Court of Appeals:
This case arises from plaintiffs allegation that defendant’s employee, a nursing assistant, sexually assaulted her in the emergency room at Hurley Medical Center on July 9, 1998. On that date, plaintiff was suffering a manic depressive episode when she was brought to defendant’s emergency department by police and placed in a treatment room. Because plaintiff was belligerent, yelling, swearing, and kicking, she was placed in restraints and administered treatment. Eventually she was left alone in the room with a nursing assistant assigned to clean the room. Plaintiff begged him to release her from the restraints.
While the aide was alone in the room with plaintiff, she continued to make sexually explicit remarks, enticing him to engage in sexual activity with her. According to plaintiff, she made these remarks “[a]t first to get him out of the room like the other nurses,” but when he went to her, she “suddenly thought he was a very powerful person in the hospital” and “would release [her.]” The aide engaged, without resistance, in digital and oral sex with plaintiff, but he did not release her and left. One of the nurses came back into the room right after the aide left. Plaintiff did not say anything because she was scared.
*219 Plaintiff reported the incident three days later to a social worker, police were notified, and an investigation commenced. Plaintiff believed the employee might have been a janitor because he was cleaning and she provided a general description of the employee. Through the hospital’s efforts, the nursing assistant was identified approximately three months later.[3]
Plaintiff brought a complaint against defendant Hurley Medical Center, alleging assault, battery, and intentional infliction of emotional distress.* **[4] The trial court denied summary disposition on these counts, finding that there was a question of fact with regard to whether Powell’s agency relationship with defendant aided Powell in committing the tortious acts against plaintiff.
At the close of plaintiffs case, defendant moved for a directed verdict, asserting that defendant could not be hable for the torts of an employee acting outside the scope of his employment. Plaintiff, relying on this Court’s opinion in Champion v Nation Wide Security, Inc,[5] argued that defendant was hable under the “aided by the agency” relationship exception to respondeat superior liability. The trial court denied defendant’s motion. The jury rendered a verdict for plaintiff in the amount of $750,000 in past damages and $500,000 in future damages. After reducing the verdict to its *220 present value, the trial court entered a judgment in favor of plaintiff in the amount of $1,147,247.42.
Defendant appealed, and the Court of Appeals, in an unpublished decision, reversed and remanded the case for entry of a judgment of dismissal, holding that the trial court erred in denying defendant’s motions for summary disposition and a directed verdict because plaintiff failed to present a material question of fact regarding defendant’s liability under the doctrine of respondeat superior.[6] The Court of Appeals denied plaintiffs motion for reconsideration. Plaintiff sought leave to appeal, and we granted the application.[7]
STANDARD OF REVIEW
This Court reviews de novo a trial court’s decision on a motion for summary disposition.[8] Summary disposition may be granted pursuant to MCR 2.116(0(10) when “[e]xcept as to the amount of damages, there is no genuine issue as to any material fact,” and the moving party is entitled to judgment as a matter of law.[9] When reviewing a motion for summary disposition, “a trial court considers affidavits, pleadings, depositions, admissions, and other evidence... in the light most favorable to the party opposing the motion.”[10]
When reviewing a trial court’s decision on a motion for a directed verdict, the standard of review is de novo and the reviewing court must consider the evidence in *221 the light most favorable to the nonmoving party.[11]
ANALYSIS
Under the doctrine of respondeat superior, the general rule is that an employer is not liable for the torts intentionally or recklessly committed by an employee when those torts are beyond the scope of the employer’s business.[12] 1 Restatement Agency, 2d, § 219(2) sets forth the general rule of respondeat superior and also lists certain exceptions to employer nonliability:
(2) A master is not subject to liability for the torts of his servants acting outside the scope of their employment, unless:
(a) the master intended the conduct or the consequences, or
(b) the master was negligent or reckless, or
(c) the conduct violated a non-delegable duty of the master, or
(d) the servant purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation.[13]
The question in this case is whether Michigan recognizes the fourth exception, § 219(2)(d), to the doctrine of respondeat superior nonliability. Plaintiff argues that Michigan has adopted, or should now adopt, the fourth exception to the respondeat superior nonliability rule. Section 219(2)(d) provides an exception to employer nonliability when a plaintiff can show that he or she *222 relied on the apparent authority of the employee, or that the employee was aided in harming the plaintiff by the existence of the agency relationship between the employee and the employer. Section 219(2)(d) and the commentary on that section establish that this exception to employer nonliability applies primarily to cases involving misrepresentation and deceit, for example when a store manager is able to cheat store customers because of his or her position as store manager for the owner.[14]
Section 219(2)(d) was first mentioned by this Court in McCann v Michigan,[15] a case in which this Court issued four separate opinions, none of which received enough concurrences to constitute a majority opinion. A majority of this Court, however, declined to adopt the exception. Consequently, this Court did not adopt § 219(2)(d) in McCann.
Nevertheless, several appellate court decisions have cited the McCann plurality’s reference to § 219(2)(d) in subsequent tort actions.[16] After noting such multiple references, the Court of Appeals panel below concluded *223 that the Michigan Supreme Court had adopted § 219(2)(d) in Champion, supra.
In Champion, supra, the plaintiff was raped by her supervisor and sought to impose liability on their employer for quid pro quo sexual harassment under the Michigan Civil Rights Act, MCL 37.2103(i). The employer attempted to avoid liability under the Civil Rights Act on the theory that the employer did not authorize the supervisor to rape his subordinate. Calling the employer’s “construction of agency principles ... far too narrow,” the Court in Champion, supra at 712, cited Restatement Agency, 2d, § 219(2)(d) in a footnote.[17] Champion did not elaborate on this citation in reaching this conclusion.
The reference to “Restatement Agency, 2d, § 219(2) (d)” in footnote six of Champion may have contributed to appellate court confusion about whether this Court adopted the aided by the agency exception to employer nonliability under the doctrine of respondeat superior.[18] We now clarify that the reference to § 219(2) (d) in Champion, supra, was made only in *224 passing and on the basis of the very distinct facts of that civil rights matter.[19] We did not, by that reference, adopt § 219(2)(d). The Court of Appeals erred in finding that this Court affirmatively adopted the “aided by the agency relationship” exception to liability under the respondeat superior doctrine set forth in Restatement Agency, 2d, § 219(2). However, this case again presents us with the opportunity to adopt the exception.
In support of adopting § 219(2) (d), plaintiff cites a First Circuit Court of Appeals decision, Costos v Coconut Island Corp.[20] In Costos, the plaintiff was a guest at an inn and had retired for the night to her room. The inn manager obtained a key to the plaintiffs room, entered without the plaintiffs knowledge, and raped her. In finding the employer of the manager vicariously liable under § 219(2) (d), the court focused on the fact that, as an agent of the inn, the manager was entrusted *225 with the key to the plaintiffs room and knowledge of where to find her. Specifically, the key was the “instrumentality” that provided the manager with the opportunity to accomplish the rape.
Costos has been sharply criticized, and appears to have been adopted by only two other federal courts.[21] Indeed, Costos was later distinguished by the Supreme Judicial Court of Maine in Mahar v StoneWood Transport.[22] Maine’s highest court not only clarified that it had not expressly adopted § 219(2)(d), but also questioned the application of the exception by the Costos court:
At least one critic notes that the First Circuit’s “instrumentality” analysis does not delineate the scope of “instrumentality.” [Casenote: Costos v Coconut Island Corp: Creating a vicarious liability catchall under the aided-by-agency-relation theory, 73 U Colo L R 1099, 1112] (“By ignoring the properly narrow scope of aided-by-agency-relation liability, the Costos court eroded traditional principles of agency law.”); see Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 760, 141 L. Ed. 2d 633, 118 S. Ct. 2257 (1998) (“In a sense, most workplace tortfeasors are aided in accomplishing their tortious objective by the employment relation: Proximity and regular contact afford a captive pool of potential victims.”).[23]
*226 Thus, the dissent’s suggestion that the Costos instrumentality ruling has been generally accepted, post at 238, is incorrect.
Courts have criticized § 219(2)(d) primarily because the exception swallows the rule and amounts to an imposition of strict liability upon employers.[24] Indeed, it is difficult to conceive of an instance when the exception would not apply because an employee, by virtue of his or her employment relationship with the employer is always “aided in accomplishing” the tort.[25] Because the exception is not tied to the scope of employment but, rather, to the existence of the employment relation itself, the exception strays too far from the rule of respondeat superior employer nonliability.
*227 Because we recognize that were we to adopt the exception we would potentially be subjecting employers to strict liability, we decline to do so. We further note that, employers will continue to be subject to liability for their negligence in hiring, training, and supervising their employees.[26] The dissent contends that these other causes of action available to plaintiffs will not provide protection to a plaintiff who is injured when an “employer does not have knowledge that an employee may misuse granted authority.”[27] Yet, the dissent fails to recognize that were this Court to impose liability on an employer under these very circumstances, we would in fact be subjecting the employer to strict liability. If the dissent believes that an employer’s prior knowledge of an employee’s propensity for bad acts is required to impose liability, then the only basis for employer liability based on an employee’s unknown propensities would be strict liability.
Given the danger of applying such a broad exception to respondeat superior employer nonliability because employers may be subject to strict liability, courts that have applied the exception have done so primarily in sexual harassment/discrimination cases on the basis that an employer is vicariously liable when a supervisory employee uses his agency position to sexually harass an employee.[28]
*228 One court that chose to apply the exception outside the sexual harassment employment realm was the Vermont Supreme Court when, in Doe v Forrest,[29] it applied § 219(2)(d) in a case where a police officer sexually assaulted a female cashier at a convenience store. The Court held that the sheriff was vicariously hable because his deputy used his agency position to commit a sexual assault while on duty.
The dissent asserts, post at 242, that this Court has the option of applying the exception in the same tailored manner as demonstrated by the Vermont Supreme Court in Doe v Forrest. Specifically, that court *229 cited Faragher v Boca Raton[30] as the basis for extending § 219(2)(d) beyond the realm of sexual harassment in the employment setting. According to the dissent, there are three balancing factors from Faragher that courts can consider when applying § 219(2)(d).[31] However, the dissent ignores the very specific context in which those factors were applied, namely to a supervisor-employee relationship. The actual language from Faragher is not broadly worded, but is in fact precisely tailored to the unique circumstances of a sexual harassment suit in an employment context.
As the dissenting justices in Doe v Forrest noted, the Faragher Court applied the exception in order to promote the policies of Title VII of the Civil Rights Act of 1964, 42 USC 2000e et seq. Given the Faragher Court’s limited application of the exception, the dissenting justices were critical of the majority’s extension of § 219(2)(d) to factually distinct scenarios:
[T]he majority’s analysis and conclusion are fundamentally flawed. First, as noted, the high court never intended for its decisions in Faragher and Ellerth[32]to have any influence on the development of common-law agency principles or the application of § 219 (2)(d) outside the specific context of Title VH.[33]
In concluding that the application of the exception to the facts of that particular case was too broad, the dissenting justices noted:
*230 [T]he majority has created a threat of vicarious liability that knows no borders. While the majority limits its holding to sexual assaults committed by “on-duty law enforcement officers,” ante, at 48, the standard that it articulates applies to a broad range of employees whose duties grant them unique access to and authority over others, such as teachers, physicians, nurses, therapists, probation officers, and correctional officers, to name but a few. As the trial court here aptly observed, the Court’s interpretation could virtually “eviscerate[j the general scope of employment rule.” [Id. at 505 (Skoglund, J., dissenting, joined by Amestoy, C.J.).]
The Vermont dissenting justices then aptly noted:
Like the finding of a duty of care in negligence law, the imposition of vicarious liability under agency principles flows not from the rote application of rules, but from a considered policy judgment that it is fair and reasonable to hold an employer liable for the harmfid actions of its employee. As Justice Souter, writing for the United States Supreme Court in Faragher v. City of Boca Raton, 524 U.S. 775, 141 L. Ed. 2d 662, 118 S. Ct. 2275 (19981, cogently observed: “In the instances in which there is a genuine question about the employer’s responsibility for harmful conduct he did not in fact authorize, a holding that the conduct falls within the scope of employment ultimately expresses a conclusion not of fact but of law.... The ‘highly indefinite phrase’ [vicarious liability] is ‘devoid of meaning in itself and is ‘obviously no more than a bare formula to cover the unordered and unauthorized acts of the servant for which it is found to be expedient to charge the master with liability, as well as to exclude other acts for which it is not.’ ” Id. at 796 (quoting W Keaton [sic] et al., Prosser and Keaton [sic] on Law of Torts § 502 (5th ed. 1984))[.][34]
We decline to follow the approach suggested by the Vermont Supreme Court majority in Doe v Forrest. As noted by the dissenting justices in that case, to do so *231 would expose employers to the “threat of vicarious liability that knows no borders” for acts committed by employees that are clearly outside the scope of employment.[35] We recognize the danger of adopting an exception that essentially has no parameters and can be applied too broadly. Because we decline to adopt the exception, plaintiff has failed to establish that defendant Hurley Medical Center is vicariously hable for the sexual misconduct of its nursing assistant who was clearly not acting within the scope of his employment when he engaged in acts of sexual misconduct with plaintiff.
CONCLUSION
The Court of Appeals below correctly reversed the judgment of the trial court because plaintiff failed to establish that defendant is liable under the theory of respondeat superior. We therefore affirm that portion of the May 4, 2005, opinion of the Court of Appeals and remand the matter to the trial court for entry of a judgment of dismissal with prejudice.
However, the Court of Appeals erred in concluding that this Court adopted Restatement Agency, 2d, § 219(2)(d) when we held in Champion, supra, that an employer was liable for quid pro quo sexual harassment under MCL 37.2103(i). That part of the judgment of the Court of Appeals is reversed. We decline to adopt the exception, which would create employer liability for the torts of an employee acting outside the scope of his or her employment when the employee is aided in accomplishing the tort by the existence of the agency relationship. Therefore, plaintiffs assertion that there is a question of fact regarding whether defendant’s employee was aided by his agency relationship is moot.
*232 Affirmed in part, reversed in part, and remanded.
Taylor, C.J., and CORRIGAN and Markman, JJ., concurred with Weaver, J.

 Bradley v Stevens, 329 Mich 556, 562; 46 NW2d 382 (1951), citing Martin v Jones, 302 Mich 355, 358; 4 NW2d 686 (1942).

 Restatement Agency, 2d, § 219(2)(d).

 Zsigo v Hurley Medical Ctr, unpublished opinion per curiam of the Court of Appeals, issued May 4, 2004 (Docket No. 240155), slip op at 1-2. Lorenzo Powell pleaded no contest to a charge of attempted assault with intent to do great bodily harm less than murder, MCL 750.84. He was sentenced to five years’ probation.

 Plaintiff had also alleged that defendant was negligent in hiring Powell, and that defendant had breached its duty of providing safe treatment and monitoring of a vulnerable patient. Defendant filed a motion for summary disposition and plaintiff stipulated that the negligence counts be dismissed.

 450 Mich 702, 712 n 6; 545 NW2d 596 (1996).

 Zsigo v Hurley Medical Ctr, unpublished opinion per curiam of the Court of Appeals, issued May, 4, 2004 (Docket No. 240155).

 472 Mich 899 (2005).

 Spiek v Dep’t of Transportation, 456 Mich 331, 337; 572 NW2d 201 (1998).

 MCR 2.116(0(10).

 Maiden v Rozwood, 461 Mich 109, 120; 597 NW2d 817 (1999).

 Elezovic v Ford Motor Co, 472 Mich 408, 442; 697 NW2d 851 (2005) (Weaver, J., concurring in part and dissenting in part).

 Bradley, supra at 562.

 1 Restatement Agency, 2d, § 219(2).

 Id., § 219 (2)(d), comment on subsection 2.

 398 Mich 65; 247 NW2d 521 (1976).

 See Zsigo v Hurley, supra, slip op at 3 ( “Our Supreme Court in McCann v Michigan, 398 Mich 65, 71; 247 NW2d 521 [1976] recited the general principle and introduced The Restatement of Agency § 219 [2][d])----”); Salinas v Genesys Health Sys, 263 Mich App 315, 318; 688 NW2d 112 (2004) (“In some jurisdictions, courts have recognized an exception to that general principle where the employee ‘was aided in accomplishing the tort by the existence of the agency relation.’ See 1 Restatement Agency, 2d, § 219[2][d]... .”); Elezovic v Ford Motor Co, 259 Mich App 187, 212; 673 NW2d 776 (2003) (Kelly, J., concurring), rev’d in part on other grounds Elezovic v Ford Motor Co, 472 Mich 408 (2005) (“ The employer is also liable for the torts of his employee if ‘ “the servant purported to act or to speak on behalf of the principal and there was rebanee upon apparent authority, or he was aided in accomphshing the tort by the existence of the agency relation,” ’ ” McCann v Michigan, 398 Mich 65, 71; 247 NW2d 521 [1976] ....) (citation omitted).

 Champion, 450 Mich at 712 n 6.

 While the Zsigo panel of the Court of Appeals held that this Court had adopted § 219(2)(d) by the reference in footnote 6 of Champion, the Court of Appeals in Salinas v Genesys Health Sys, 263 Mich App 315, 320; 688 NW2d 112 (2004), held otherwise:
Further, we question whether Champion generally “adopted” the Restatement exception to the usual rule that an employer cannot he held hable for torts intentionally committed by an employee. The only mention of the Restatement exception was made in passing in a footnote. In the course of rejecting the defendant’s “construction of agency principles [as] far too narrow,” the Court made a “see” reference to the Restatement exception. [Champion, supra] at 712 n 6. We are unconvinced that this constituted an adoption of the Restatement exception, especially for cases like the present one involving tort actions not at issue in Champion.

 The dissent contends that the Champion Court implicitly adopted § 219(2)(d) and did not limit its application. We note, to the contrary, that the Champion holding was carefully crafted to apply only in the context of quid pro quo sexual harassment under MCL 37.2103(i). Specifically, the Court stated:
In this case, we must decide whether an employer is liable for quid pro quo sexual harassment under MCL 37.2103(i); MSA 3.548(103)(i) where one of its employed supervisors rapes a subordinate and thereby causes her constructive discharge. We hold that an employer is liable for such rapes where they are accomplished through the use of the supervisor’s managerial powers. We believe that this result best effectuates the remedial purpose of the Civil Rights Act, MCL 37.2101 et seq.; MSA 3.548(101) et seq. [Champion, supra at 704-705 (emphasis added).]
Thus, even in the context of quid pro quo sexual harassment, the sexual assault must be “accomplished through the use of the supervisor’s managerial powers.” Id. This limited exception clearly does not apply to the facts in this case.

 137 F3d 46 (CA 1, 1998).

 LaRoehe v Denny’s Inc, 62 F Supp 2d 1366, 1373 ( SD Fla, 1999)(the defendant restaurant was vicariously liable under § 219[2][d] for racial slur directed at customers by restaurant manager because manager used his position of authority as basis for denial of services to customers); Del Amora v Metro Ford Sales & Service, Inc, 206 F Supp 2d 947, 952 (ND Ill, 2002) (the defendant auto dealer was hable under § 219[2][d] where the defendant’s employee was able to obtain the plaintiffs credit report under false pretenses because of the employee’s position at the dealership). Cf. Primeaux v United States, 181 F3d 876, 879 (CA 8, 1999) (declining to adopt Restatement exception and noting, “[t]o our knowledge, the Supreme Court of South Dakota has not had occasion to apply or even cite § 219[2][d] of the Restatement”).

 823 A2d 540 (2003).

 Id. at 546 n 6.

 See Gary v Long, 313 US App DC 403, 409; 59 F3d 1391 (1995); Smith v Metropolitan School Dist Perry Twp, 128 F3d 1014, 1029 (CA 7, 1997).

 For this reason, the Court of Appeals, in Cawood v Rainbow Rehab Ctr, 269 Mich App 116; 711 NW2d 754 (2005), wisely rejected the application of the exception in a case involving sexual assault by a nurse of a patient in a rehabilitation center. The panel succinctly reasoned:
“This Court has held that an employee is not ‘aided in accomplishing the tort by the existence of the agency relation,’ under the Restatement exception, just because of the ‘mere fact that an employee’s employment situation may offer an opportunity for tortious activity....’” [Salinas v Genesys Health Sys, 263 Mich App 315, 321; 688 NW2d 112 (2004)] quoting Bozarth v Harper Creek Bd of Ed, 94 Mich App 351, 355; 288 NW2d 424 (1979). Rather, the Restatement exception will only apply where “the agency itself empowers the employee to commit the tortious conduct.” Salinas, supra at 323. In this case, defendant’s employee was not empowered to engage in the sexual conduct by the existence of the agency relationship. He did not use his authority or any instrumentality entrusted to him in order to facilitate the inappropriate encounter. Instead, the existence of the employment relationship merely provided the employee with the opportunity to engage in the inappropriate conduct. Consequently, the Restatement exception would not apply. [Cawood, supra at 120-121.]

 Plaintiffs complaint in fact included a count of negligent hiring, a count that she ultimately stipulated to dismiss after summary disposition motions were argued before the trial court.

 Post at 237 n 6.

 Veco, Inc v Rosebrock, 970 P2d 906 (Alas, 1999) (Alaska Supreme Court held vicarious liability may be imposed when an employee is aided in accomplishing a tort by the employee’s position with the employer, but an employer’s vicarious liability for punitive damages is limited to acts by managerial employees while acting within the scope of their employment); Entrot v BASF Corp, 359 NJ Super 162; 819 A2d 447 (2003) (New *228 Jersey Superior Court held an employer vicariously liable for a supervisor’s conduct outside the scope of employment when the supervisor was aided in the commission of the harassment by the agency relationship); State v Schallock, 189 Ariz 250, 262; 941 P2d 1275 (1997) (Arizona Supreme Court held “[u]nder the common law of agency, a supervisor’s use of the actual or apparent authority of his position — power conferred by the employer — ‘gives rise to [the employer’s] liability under a theory of respondeat superior.’ Nichols [ v Frank, 42 F3d 503, 514 (CA 9,1994)], citing RESTATEMENT § 219(2)(d)....”). See, also, Burlington Industries, Inc v Ellerth, 524 US 742; 118 S Ct 2257; 141 L Ed 2d 633 (1998), and Faragher v Boca Raton, 524 US 775; 118 S Ct 2275; 141 L Ed 2d 662 (1998).

 176 Vt 476; 853 A2d 48 (2004). See also Mary M v City of Los Angeles, 54 Cal 3d 202; 814 P2d 1341 (1991) (California Supreme Court held that when a police officer on duty misuses his official authority by raping a woman whom he has detained, the public entity that employs him can be held vicariously liable); Nazareth v Herndon Ambulance Service, Inc, 467 So 2d 1076 (Fla App, 1985) (Florida Court of Appeals acknowledged state’s adoption of Restatement 2d, § 219 [2][d] in fraud case); Industrial Ins Co of New Jersey v First Nat Bank of Miami, 57 So 2d 23 (1952). But, see, Bowman v State, 10 AD3d 315, 317; 781 NYS2d 103 (2004) (New York Supreme Court declined to adopt § 219[2][d] noting that “ ‘liability premised on apparent authority [is] usually raised in a business or contractual dispute context.. ..’ ”) (citation omitted); Olson v Connerly, 156 Wis 2d 488; 457 NW2d 479 (1990) (Wisconsin Supreme Court declined to apply § 219[2][d] in scope of employment case where it did not appear that employee was actuated, at least in part, by a purpose to serve the employer).

 524 US 742; 118 S Ct 2257; 141 L Ed 2d 662 (1998).

 The dissent lists them as:
(1) the opportunity created by the relationship, (2) the powerlessness of the victim to resist the perpetrator and prevent the unwanted contact, and (3) the opportunity to prevent and guard against the conduct. [Post at 240, citing Doe v Forrest, supra at 491.]

 Burlington Industries, Inc v Ellerth, supra.

 Doe v Forrest, supra at 509 (Skoglund, J., dissenting, joined by Amestoy, C.J.).

 Id. at 506 (Skoglund, J., dissenting, joined by Amestoy, C.J.).

 Id. at 504.