*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

KIMBERLY TURRENTINE and CHELSEA CUMMINGS,

        Plaintiffs-Appellees,

v

JAGU LLC, doing business as SUPER 8 BELLEVILLE, and ASHISHKUMAR K. PATEL,

        Defendants-Appellants,

and

WYNDHAM HOTELS & RESORTS INC., SURAJ REALTY CORPORATION, SUNILBHAI T. PATEL, and KOSO-RAJU BABU-RAO,

        Defendants.

UNPUBLISHED
February 05, 2026
10:20 AM

No. 368405
Wayne Circuit Court
LC No. 22-009735-NO

---

ON REMAND

Before: RIORDAN, P.J., and BOONSTRA and YATES, JJ.

PER CURIAM.

      Defendants, Jagu LLC, doing business as Super 8 Belleville ("Jagu"), and Ashishkumar K. Patel ("Patel"), challenge the trial court's order denying them summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact).[1] When this case originally was before us, we reversed and remanded to the trial court for an order granting summary disposition in favor of defendants. *Turrentine v Jagu, LLC*, unpublished per curiam opinion of the Court of Appeals,

---

[1] Except as otherwise noted, any reference to defendants refers only to Jagu and Patel.

issued January 13, 2025 (Docket No. 368405). However, our Supreme Court vacated that opinion and remanded this case to us "for consideration of whether defendants Jagu, LLC, and Ashishkumar K. Patel had constructive knowledge of defendant employee Koso-Raju Babu-Rao's prior acts." *Turrentine v Jagu, LLC*, ___ Mich ___; 25 NW3d 321, 322 (Mich, 2025). For the reasons set forth, we now affirm the trial court.

## I. FACTS

In the original appeal, we summarized the facts of the case as follows:

This matter stems from two incidents of sexual assault by a Jagu employee, defendant Koso-Raju Babu-Rao ("Babu-Rao"), against plaintiffs Chelsea Cummings ("Cummings") and Kimberly Turrentine ("Turrentine") at a Super 8 Motel in Belleville, Michigan (the "Super 8"). Patel owns Jagu, which bought the Super 8 on February 9, 2018; Jagu was the owner when the incidents involving plaintiffs and Babu-Rao occurred. Babu-Rao was hired by Patel to work as a front desk clerk at the Super 8. Babu-Rao worked night shifts at the Super 8 from 2018 to 2020. On July 31, 2019, while Cummings was walking to her room, it was alleged that Babu-Rao "grabbed" her, "kissed [her] cheek of [her] face," and "grabbed both of [her] breasts and started to squeeze and fondle [her] breasts." Cummings checked out the next morning and reported the incident to the police.

On December 29, 2019, Babu-Rao went to Turrentine's room to repair her television and telephone. Babu-Rao grabbed Turrentine's buttocks. Turrentine "screamed" and told Babu-Rao "not to touch her." Babu-Rao pushed Turrentine on the bed, "got on top of [Turrentine], grabbed her breasts[,] pulled his pants and underwear down and attempted to penetrate [Turrentine] with his penis." Turrentine "[k]icked and hit Babu-Rao until he got off of her and left the room." Turrentine reported the incident to police. A warrant was recommended and received by the Wayne County Prosecutor's Office on September 2, 2019. Babu-Rao was arrested on January 3, 2020.

Turrentine filed a complaint against "Super 8, Belleville, a Michigan DBA" and Patel, in addition to Babu-Rao and defendants Wyndham Hotels & Resorts, Inc., Suraj Realty Corporation, and Sunilbhai T. Patel, alleging (I) negligent hiring; (II) negligent retention; (III) negligent supervision; and (IV) assault and battery. Wyndham, Super 8, Patel, and Babu-Rao filed an answer to the complaint.[FN 4] An amended complaint was filed, adding Cummings as a plaintiff and Jagu as a defendant. The amended complaint included allegations of sexual assault by Babu-Rao against Cummings, in addition to the same allegations included in the complaint involving Turrentine. The amended complaint alleged (I) negligent hiring as to all defendants for the acts committed by Babu-Rao against Turrentine; (II) negligent retention as to all defendants for the acts committed by Babu-Rao against Turrentine; (III) negligent supervision as to all defendants for the acts committed by Babu-Rao against Turrentine; (IV) assault and battery as to all defendants for Babu-Rao's sexual assault of Turrentine; and (V) assault and battery

-2-

as to Babu-Rao for his sexual assault of Cummings. Jagu, Patel, and Wyndham filed an answer and affirmative defenses to the amended complaint.

Jagu, Patel, and Wyndham moved for summary disposition under MCR 2.116(C)(10), arguing that plaintiffs' claims should be dismissed. Plaintiffs filed an answer to the motion for summary disposition. Jagu, Patel, and Wyndham filed a reply. The trial court held a hearing on the motion for summary disposition. After oral argument, the trial court denied the motion for summary disposition as to Jagu and Patel, concluding that the evidence presented questions of fact. The trial court thereafter entered an order denying the motion for summary disposition as to plaintiffs' claims against Jagu and Patel, and granting the motion for summary disposition as to plaintiffs' claims against Wyndham. This appeal ensued.

---

[4] Suraj Realty Corporation and Sunilbhai T. Patel were dismissed for nonservice under MCR 2.102(E).

[*Turrentine*, unpub op at 2-3 (some footnotes omitted).]

Thus, the question before us on appeal was whether the trial court erred by denying defendants' motion for summary disposition.[2] *Id*. at 3. We concluded that the trial court did err in that regard because "there is no evidence establishing a factual dispute whether defendants were aware of Babu-Rao's sexual assault of Cummings, or of his other alleged sexual improprieties." *Id*. at 7. We reasoned, in relevant part:

Defendants offered the deposition testimony of Van Buren Township Detective Michael Long, Babu-Rao, Patel, and Cummings, as well as the police reports and Babu-Rao's employment application, to argue that Patel never knew of Babu-Rao's sexual assault of Cummings before the sexual assault of Turrentine. In this regard, Cummings did not report the incident to management at the Super 8 because she thought Babu-Rao was a manager, and she never met Patel. Cummings called "corporate" and filed a police report against Babu-Rao. Cummings spoke to two maids at the Super 8 the day after the incident, and the maids informed Cummings that similar incidents involving Babu-Rao "happened before." Even if these hearsay statements were admissible, they do not establish that Patel knew about Babu-Rao's earlier sexual assaults. Further, Cummings had no knowledge whether the police spoke to Patel. Patel denied having knowledge from the police or anyone else regarding Babu-Rao's sexual assault of Cummings until after Babu-Rao's arrest. Patel emphasized that it was typical for police to ask for surveillance video, but not usual for police to share details of their investigations.

---

[2] Only counts one through four of the amended complaint are at issue on appeal. Count five only asserted a claim against Babu-Rao, not against defendants.

Plaintiffs offered the deposition testimony of the same witnesses, as well as the deposition testimony of Ronald S. Jihad, to argue, at a minimum, a question of fact existed as to Patel's knowledge of Babu-Rao's propensity for committing sexual assault. Jihad testified that when serving plaintiffs' summons and complaint, Patel told him Babu-Rao "had a history" of "immoral sexual advances" when he worked "at a previous hotel." Jihad did not provide an exact time frame, but stated this conduct occurred "at least 15 years ago" at a "Hampton Hotel." Although this evidence could establish a question of fact whether Patel knew about a prior incident of sexual assault by Babu-Rao before either incident involving plaintiffs, plaintiffs fail to offer any evidence as to when such knowledge was allegedly obtained. In other words, it could very well be that Patel did not learn of Babu-Rao's alleged history until after the events at issue in this case.

The record supports that Detective Long visited the Super 8 to investigate the sexual assault of Cummings. . . . Of importance, when asked if it was likely Patel "wasn't made aware of the sexual assault complaint made against Babu-Rao" after his conversation with Patel on August 9, 2019, Detective Long answered: "Correct." After the warrant was issued on September 2, 2019, Detective Long stated: "[Patel] would not have been made aware of the warrant." Detective Long stated: "I don't think [Patel] was made aware until I think they picked [Babu-Rao] up." Asked if Patel was "aware of the incident," Detective Long replied: "I have no idea." Asked if he disclosed to Patel he was "investigating a [CSC] case" when he "went for the video with regard to Ms. Turrentine's case," Detective Long answered: "I don't believe I did." When asked if he told Patel he was "investigating a [CSC] case" with regard to the incident involving Cummings, Detective Long answered: "I don't believe I did."

\* \* \*

. . . Detective Long was unaware if "anyone" from the police department "made Patel aware in August of 2019 that a criminal sexual attack was made." Even when viewing the admissible evidence in the light most favorable to plaintiffs, there does not exist a question of fact because Detective Long was definitive that he did not make Patel aware of the allegations against Babu-Rao after the sexual assault of Cummings and before the sexual assault of Turrentine. On cross-examination, Detective Long was steadfast in his testimony that he did not recall telling Patel anything about his investigation. At best, Detective Long was not aware if Patel was ever made aware of the allegations, but plaintiffs did not meet their burden of establishing any evidence of Patel's awareness of Babu-Rao's behavior as his employee.

For these reasons, defendants cannot be vicariously liable for the assault and battery against Turrentine because the evidence fails to establish a genuine issue of material fact as to whether Patel was aware of Babu-Rao's assault of Cummings beforehand. Moreover, to the extent that plaintiffs rely on Jihad's testimony indicating that Patel knew that Babu-Rao had committed improper sexual advances about 15 years beforehand at another hotel, the record does not indicate

when Patel became aware of that. [FN 10: By the same measure, to the extent that plaintiffs rely on the maids' statements indicating that Babu-Rao had previously committed sexual assaults, the record does not establish that Patel had similar knowledge.] Thus, Jihad's testimony fails to establish a genuine issue of material fact for vicarious liability regarding the assault against Turrentine. Therefore, defendants are entitled to summary disposition on that assault-and-battery claim.

\* \* \*

In this case, as stated, there is no evidence establishing a factual dispute whether defendants were aware of Babu-Rao's sexual assault of Cummings, or of his other alleged sexual improprieties. Although knowledge of an employee having actually committed another rape would justify anticipating that the employee would reoffend, if the employer had good reason to know of the prior crime, here there is no evidence to suggest defendants knew about Babu-Rao's sexual assault of Cummings or others before Babu-Rao's sexual assault of Turrentine. Consequently, [the] additional negligence claims must fail as well. [*Id*. at 4-7 (cleaned up).][3]

Plaintiffs sought leave to appeal in our Supreme Court. That Court, in lieu of granting leave to appeal, vacated our opinion and remanded the case to this Court "for consideration of whether defendants Jagu, LLC, and Ashishkumar K. Patel had constructive knowledge of defendant employee Koso-Raju Babu-Rao's prior acts." *Turrentine*, 25 NW3d at 322. We now do so.[4]

## II. STANDARD OF REVIEW

"We review de novo motions for summary disposition brought under MCR 2.116(C)(10)." *Johnson v Recca*, 492 Mich 169, 173; 821 NW2d 520 (2012). "Summary disposition under MCR 2.116(C)(10) is appropriate when, except as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." *Lockport Twp v City of Three Rivers*, 319 Mich App 516, 519; 902 NW2d 430 (2017) (cleaned up). "In deciding a motion under subrule (C)(10), the trial court views affidavits and other documentary evidence in the light most favorable to the nonmoving party." *Id*. (quotation marks and citation omitted).

## III. DISCUSSION

---

[3] JUDGE YATES concurred, stating that "because I am convinced that the ordinary (and readily defensible) protection afforded to employers when their employees commit crimes must give way when their employees repeatedly commit the same type of criminal misconduct, I add this concurrence to my colleagues' opinion in the hope that our Supreme Court will see fit to correct this miscarriage of justice visited upon Ms. Turrentine." *Id*. at 1-2 (YATES, J., *concurring*).

[4] Plaintiffs and defendants, respectively, filed supplemental briefs on remand, which we have considered.

The question before us is whether defendants had constructive knowledge of Babu-Rao's alleged prior acts of sexual assault. In this regard, as to counts one, two, and three of the amended complaint, negligent hiring, retention, and supervision, respectively, employers may be "subject to liability for their negligence in hiring, training, and supervising their employees." *Zsigo v Hurley Med Ctr*, 475 Mich 215, 227; 716 NW2d 220 (2006). To establish such claims, "the plaintiff must prove the four elements of duty, breach of that duty, causation, and damages." *Brown v Brown*, 478 Mich 545, 552; 739 NW2d 313 (2007). "[T]he gravamen of negligent hiring or retention is that the employer bears some responsibility for bringing an employee into contact with a member of the public despite knowledge that doing so was likely to end poorly." *Mueller v Brannigan Bros Restaurants & Taverns LLC*, 323 Mich App 566, 574; 918 NW2d 545 (2018). "In other words, it is not a tort dependent on vicarious liability at all, but rather direct liability." *Id*. "[A] claim of negligent hiring or retention requires actual or constructive knowledge by the employer that would make the specific wrongful conduct perpetrated by an employee predictable." *Id*. at 575 (emphasis omitted). "In particular, employers are not expected to anticipate that their employees will engage in criminal conduct without some particularized forewarning thereof." *Id*. "Knowledge of an employee having actually committed another rape would justify anticipating that the employee would reoffend, if the employer had good reason to know of the prior crime." *Id*. "However, employers are not strictly liable for their employees' misconduct that goes beyond what would generate vicarious liability under respondeat superior." *Id*.

Moreover, as to count four of the amended complaint, assault and battery, "[a]n employer is generally liable for the torts its employees commit within the scope of their employment." *Hamed v Wayne Co*, 490 Mich 1, 10-11; 803 NW2d 237 (2011). "This Court has defined 'within the scope of employment' to mean 'engaged in the service of his master, or while about his master's business.' " *Id*. at 11 (some quotation marks and citation omitted).

> The general rule that an employer is not liable for acts of its employee outside the scope of its business, however, does not preclude vicarious liability in every instance. This Court has consistently recognized that an employer can be held liable for its employee's conduct if the employer knew or should have known of the employee's propensities and criminal record before that employee committed an intentional tort. This inquiry involves an analysis of whether an employer had (1) actual or constructive knowledge of prior similar conduct and (2) actual or constructive knowledge of the employee's propensity to act in accordance with that conduct. Under this two-pronged approach, the conduct at issue may be so close in time to prior similar conduct that knowledge under the first prong gives rise to a valid inference that the conduct was foreseeable under the second prong. Conversely, if an employee's actions were temporally distant and the employee's recent record suggested a change in character, foreseeability would not be established. [*Id*. at 12 (cleaned up).]

Our Supreme Court has "consistently held that an employer's liability for the criminal acts of its employees is limited to those acts it can reasonably foresee or reasonably should have foreseen. This is because we should not expect employers to assume that their employees will disobey the law." *Id*. at 13.

Here, as noted, our Supreme Court directed us to address "constructive knowledge." *Turrentine*, 25 NW3d at 322. "Constructive knowledge" is defined as "knowledge that one using reasonable care or diligence should have, and therefore that is attributed by law to a given person." *Echelon Homes, LLC v Carter Lumber Co*, 472 Mich 192, 197; 694 NW2d 544 (2005) (cleaned up). One instructive case in this regard is *Hamed*. In *Hamed*, the Court considered the county's liability for an employee's criminal acts. *Hamed*, 490 Mich at 5-6. A deputy at the county jail sexually assaulted the plaintiff after she resisted his offer of better treatment for sexual favors. *Id*. at 6. Prior complaints against the deputy did not include sexual assault. *Id*. at 16. Rather, the complaints involved violations of work policies, such as leaving his work station while on duty. *Id*. More serious grievances included using a police vehicle without authorization, allegedly threatening his landlord after an eviction notice, and fighting with a male inmate after an exchange of words. *Id*. The Court concluded that the deputy's prior misconduct was not similar to his sexual assault of the plaintiff, so that criminal act was unforeseeable. *Id*.

In contrast, Babu-Rao's alleged prior history at the current hotel or a previous hotel, or both, specifically included one or more sexual assaults. Further, the assaults against both plaintiffs involved physical touching of a sexual nature. The assaults were consistent with Babu-Rao's history, so it follows that, if defendants had constructive knowledge of Babu-Rao's prior sexual assault(s) of hotel guests, his assaults of plaintiffs were foreseeable. See *id*. at 12. See also *Bradley v Stevens*, 329 Mich 556, 562-563; 46 NW2d 382 (1951), where the Court ruled that if the employer knew, or should have known, about the employee's propensities and criminal record involving common-law rape, the employer should not escape liability for the employee's subsequent rape of a customer.

To show constructive knowledge, plaintiffs rely, in relevant part, on the statements of two housekeepers and their knowledge of Babu-Rao's prior assaults as expressed to Cummings, which she described in her deposition:

> *A*. One—two of the—two of the maids had told me that—after I got sexually harassed, I stated that morning, when I went to leave, I seen two maids outside smoking a cigarette. So I approached both of them, and I asked them, you know, Hey—I told them what happened and I asked, you know, Has this ever happened?
>
> They stated to me that this happened before, but he—he works there all the time. They said that he's there 16 hours a day, but he also stays in the hotel in a room, and the owner knew about that.
>
> *Q*. Okay. Did they—
>
> When the two maids asked you—or when the two maids informed you that—that that had happened before, what was it they were telling you that had happened before with Babu?
>
> *A*. Somebody—he had sexually harassed or assaulted somebody else, but people were too afraid to go to the police.

*Q*. And you said people. So did they—did they articulate to you that he had sexually harassed, assaulted one other person or more than one?

*A*. It sounded—it sounded like people.

\* \* \*

They—they said people, so I'm assuming more than one person. They told me it happened before. So that's why I went—you know. It was like, okay, I definitely got to go to the police now and not just call corporate and tell them what went on because this is becoming more than just one person; this is happening often, it sounds like.

Simply put, the housekeepers allegedly told Cummings that they had knowledge that Babu-Rao had sexually assaulted, or perhaps harassed, other people. Moreover, while not directly stated in Cummings's deposition testimony, it may reasonably be inferred that this conduct occurred against other female guests of the hotel, and that the housekeepers became aware of this conduct in the course of their employment. If the housekeepers' statements were true, then the owner-defendants, i.e., Jagu and Patel, arguably had constructive knowledge of Babu-Rao's alleged prior acts.[5] This is because, as a general proposition, certain knowledge acquired by multiple employees during employment may be imputed to their corporate employer. See generally, *Upjohn Co v New Hampshire Ins Co*, 438 Mich 197, 213-214; 476 NW2d 392 (1991).[6] For example, in the sexual-harassment context, the employer's knowledge may be shown by "the pervasiveness of the harassment, which gives rise to the inference of knowledge or constructive knowledge." *Sheridan v Forest Hills Pub Sch*, 247 Mich App 611, 627; 637 NW2d 536 (2001) (quotation marks and citation omitted). See also *Beumel v KKC Entertainment, Inc*, unpublished per curiam opinion of the Court of Appeals, issued June 20, 2025 (Docket No. 368929), at 8 ("Plaintiff presented evidence that Matthew had a reputation among the bartenders for physically removing customers from the bar who were being ejected with more force than necessary. . . . [T]hese are the alleged

---

[5] Defendants argue that the housekeepers' statements were inadmissible hearsay. In ruling on motions for summary disposition under MCR 2.116(C)(10), courts consider evidence that is admissible. See MCR 2.116(G)(6). However, the evidence need not be admissible in form, only in content. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 373; 775 NW2d 618 (2009). Plaintiffs persuasively argue that the evidence would be plausibly admissible under MRE 801(d)(2) as an admission of a party opponent. See *Podmajersky v Dep't of Treasury*, 302 Mich App 153, 166-167; 838 NW2d 195 (2013) (ruling that a letter from the petitioners' attorney was admissible as an admission). Alternatively, the evidence could be admissible if the housekeepers testified at trial.

[6] See also *Southport Little League v Vaughan*, 734 NE2d 261, 275 (Ind Ct App, 2000) ("[K]nowledge of material facts acquired by an agent in the course of his employment, and within the scope of his authority, is the knowledge of the principal, and where no actual knowledge of the principal is shown, the rule will be given the effect on the theory of constructive knowledge, resting on the legal principle that it is the duty of the agent to disclose to his principal all material facts coming to his knowledge . . . .").

statements of individuals directly employed by KKC, which could support that management was aware of Matthew's reputation.").[7] Here, the fact that multiple housekeepers told Cummings that Babu-Rao had committed multiple such acts suggests that he had some type of "reputation" that may be imputed to defendants. See *id*.

To be clear, while only knowledge of certain "material" facts may be imputed to the employer, not all facts known by its employees, see *Southport Little League v Vaughan*, 734 NE2d 261, 275 (Ind Ct App, 2000), at this stage of the proceedings, we believe that the knowledge allegedly possessed by the housekeepers of sexual assault committed by Babu-Rao may fairly be imputed to defendants. That is, it is reasonable to infer that the housekeepers became aware of Babu-Rao's prior acts during the housekeepers' employment duties, and they had some unique obligation to remit that knowledge to their employer. Compare *Hecksher v Fairwinds Baptist Church, Inc*, 115 A3d 1187, 1202 (Del, 2015) (holding that the school employee's knowledge of sexual abuse may be imputed to the school because she witnessed the abuse during her ordinary employment duties, "her knowledge and conduct pertained to her duties as an employee," and "she had the responsibility and authority to act but did not do so").

Therefore, given the housekeepers' statements to Cummings, plaintiffs established a genuine issue of material fact regarding whether defendants had constructive knowledge of Babu-Rao's alleged prior sexual assaults before his sexual assault of Turrentine.[8] As a result, the trial

---

[7] This Court is not bound by unpublished opinions but may consider them persuasive. *Warren City Council v Fouts*, 345 Mich App 105, 111 n 1; 4 NW3d 79 (2022).

[8] Plaintiffs argue that actual knowledge was established through the housekeepers' statement to Cummings to the effect of, "the owner knew about that." However, when that statement is considered in context, it appears that the housekeepers were referring to the fact that the owner was aware that Babu-Rao stayed at a hotel room.

Further, plaintiffs argue that constructive knowledge was additionally established through the following facts: (1) Cummings reported the assault to defendants' corporate offices; (2) Detective Long investigated Babu-Rao's assault of Cummings; and (3) Patel admitted to Jihad, the process server, that Babu-Rao had a history of prior misconduct at another hotel. We disagree. With regard to the first alleged fact, plaintiffs have not cited caselaw holding that a corporation's knowledge is imputed to its subsidiary or franchisee management employees, and this Court does not research authority on behalf of appellants. See *Reighard v ESPN, Inc*, 341 Mich App 526, 545; 991 NW2d 803 (2022). With regard to the second alleged fact, as we explained in our previous opinion, "Detective Long was definitive that he did not make Patel aware of the allegations against Babu-Rao after the sexual assault of Cummings and before the sexual assault of Turrentine." *Turrentine*, unpub op at 6. The mere existence of a police investigation does not mean that Patel should have known that the subject matter of the investigation was sexual assault. Finally, with regard to the third alleged fact, as we explained in our previous opinion, "[a]lthough this evidence could establish a question of fact whether Patel knew about a prior incident of sexual assault by Babu-Rao before either incident involving plaintiffs, plaintiffs fail to offer any evidence

court correctly denied defendants' motion for summary disposition of count four of the amended complaint, assault and battery, because there is a triable issue as to vicarious liability on this basis. See *Hamed*, 490 Mich at 12.

Further, for essentially the same reasons, the trial court correctly denied defendants' motion for summary disposition of counts one to three of the amended complaint, negligent hiring, retention, and supervision, respectively. To sustain those counts, as noted, a plaintiff must show "actual or constructive knowledge by the employer that would make the specific wrongful conduct perpetrated by an employee predictable." *Mueller*, 323 Mich App at 575 (emphasis omitted). Because we have concluded that there is a genuine issue of material fact regarding whether defendants had constructive knowledge for the purposes of count four, it logically follows that there is a genuine issue of material fact regarding constructive knowledge for the purposes of counts one, two, and three.

## IV. CONCLUSION

There is a genuine issue of material fact regarding whether defendants had constructive knowledge of Babu-Rao's prior acts through the housekeepers' actual knowledge. The trial court correctly denied defendants' motion for summary disposition. Therefore, we affirm.[9]

/s/ Michael J. Riordan
/s/ Mark T. Boonstra
/s/ Christopher P. Yates

---

as to when such knowledge was allegedly obtained." *Id*. at 5. Thus, the third alleged fact does not show actual or constructive knowledge.

[9] We note that defendants' motion for summary disposition only argued that Babu-Rao's prior acts were outside the scope of his employment and, additionally, that defendants did not have knowledge of his propensities. For the reasons explained herein, we conclude that there is a genuine issue of material fact regarding whether defendants had constructive knowledge. Moreover, "[t]he general rule that an employer is not liable for acts of its employee outside the scope of its business" is subject to the limitation that "an employer can be held liable for its employee's conduct if the employer knew or should have known of the employee's propensities and criminal record before that employee committed an intentional tort." *Hamed*, 490 Mich at 12. Thus, having concluded that defendants arguably had constructive knowledge, it is unnecessary for us to address defendants' argument regarding the scope of employment to resolve this appeal.